UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| *In re*: | § |
| | § |
| Save Our Springs (S.O.S.) Alliance, Inc., | § |
| | § |
| *Debtor* | § |

| | | |
|---|---|---|
| Save Our Springs (S.O.S.) Alliance, Inc., | § | |
| | § | |
| *Appellant/Cross-Appellee* | § | |
| | § | |
| vs. | § | Cause No. A-08-CA-727 (LY) |
| | § | (Consolidated with A-08-CA-753-LY) |
| Sweetwater Austin Properties, LLC, | § | |
| | § | |
| *Appellee/Cross-Appellant* | § | |

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

BRIEF OF APPELLANT AND CROSS-APPELLEE,
SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC.

B. Weldon Ponder, Jr.
Attorney at Law
State Bar of Texas No. 16110400
Building 3, Suite 200
4601 Spicewood Springs Road
Austin, Texas  78759-7841
Phone (512) 342-8222 / Fax (512) 342-8444

ATTORNEY FOR APPELLANT AND CROSS-
APPELLEE, SAVE OUR SPRINGS (S.O.S.)
ALLIANCE, INC.

## TABLE OF CONTENTS

**TABLE OF CONTENTS**…………………………………………………...i

**TABLE OF AUTHORITIES**…………………………………………...iii

**STATEMENT OF JURISDICTION**…………………………………...1

**STATEMENT OF ISSUES**…………………………………………...1

**STANDARD OF REVIEW**...........................................................................2

**STATEMENT OF THE CASE**………………………………………….3

**ARGUMENT**………………………………………………………16

    **I.**     **The Bankruptcy Court Applied an Improper Legal Standard to Determine Feasibility, Erroneously Found that the Debtor's Plan Was Not Feasible, and Abused Its Discretion in Refusing to Accept Additional Evidence on Feasibility**………………………………………..16

        i.  The Bankruptcy Court Applied an Improper, Insuperable Legal Standard for Feasibility, and Disregarded a Multi-Factor Test Commonly Used by Courts in this Circuit………………………18

        ii.  The Bankruptcy Court Clearly Erred in Determining that the Debtor Had Not Shown the Plan's Feasibility by a Preponderance of the Evidence……………………………………………..20

        iii.  The Bankruptcy Court Abused Its Discretion in Refusing to Accept Additional Evidence on Feasibility Presented by the Debtor After the Confirmation Hearings………………………………………30

    **II.**   **The Bankruptcy Court Erred as a Matter of Law in Refusing to Allow the Debtor to Change Its Small Business Debtor Status, Striking the Debtor's Amended Voluntary Chapter 11 Petition, and Dismissing the Debtor's Chapter 11 Case**………………………………………..33

        i.  The Bankruptcy Court Erred as a Matter of Law in Determining that the Debtor Could Not Change Its "Small Business Debtor" Designation, As the Debtor Was Never A "Small Business Debtor"…………………………………………………...35

        ii.  The Bankruptcy Court Failed to Balance the Equities and Recognize the Policies Underlying Chapter 11 that Favor Giving the Debtor Another Opportunity to Reorganize…………………37

iii.   The Debtor Met the Requirements of the Law By Filing a Plan Within the 300-Day Deadline and Therefore Should be Allowed to File Another Plan……………………………………………..40

III.   **The Debtor's Separate Classification of Judgment Creditor Sweetwater (Class 4) from the General Unsecured Creditors (Class 6) Was Proper and Based on Sweetwater's "Distinctly Different Stake in the Future Viability" of the Debtor, or "Non-Creditor Interests"**..………..................42

**CONCLUSION**…………………………………………………………………………50

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Barnes*, 309 B.R. 888 (Bankr. N.D. Tex. 2004)……………………………...........28

*In re Barnes*, 310 B.R. 209 (Bankr. D.Colo. 2004)…………………………………….38

*Berkeley Federal Bank & Trust v. Sea Garden Motel and Apartments*
(*In re Sea Garden Motel and Apartments*), 195 B.R. 294 (D.N.J. 1996)………………..18

*In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex.)……………44

*In re Coleman Enterprises*, 275 B.R. 533 (8th B.A.P. 2002)……………………………36

*In re CPDC, Inc.*, 337 F.3d 436 (5th Cir. 2003)…………………………………………..3

*Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*,
926 F.2d 1458, 1464 (5th Cir. 1991)………………………………………………………..3

*Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994)…………………………………………....31

*In re Florida Coastal Airlines, Inc.*, 361 B.R. 286 (Bankr. S.D. Fla. 2007)……………41

*In re Greystone III Joint Venture* (*Phoenix Mutual Life Insurance Company vs.
Greystone III Joint Venture*), 995 F.2d 1274, (5th Cir. 1991)…………………43, 44, 46

*Heartland Federal Savings & Loan Assn. v. Briscoe Enterprises, Ltd., II*
(*In re Briscoe Enterprises, Ltd., II*), 994 F.2d 1160 (5th Cir. 1993)……………16, 19, 44

*In re The Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007)……………….45

*Kaiser Aerospace and Electronics Corp. v. Teledyne Indus., Inc.*,
229 B.R. 860(S.D.Fla. 1999)………………………………………………………………38

*In re Lakeside Global, L.L.C. II*, 116 B.R. 499 (Bankr. S.D. Tex. 1989)……………20, 29

*In re Landing Associates, Ltd.*, 157 B.R. 791 (Bankr. W.D. Texas 1993)…………..18, 20

*Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F. 2d 167 (5th Cir. 1990)…….31

*In re M & S Assocs., Ltd*. 138 B.R. 845 (Bankr. W.D. Tex. 1992)…………………20, 27

*In re Mercer*, 246 F.3d 391 (5th Cir. 2002)………………………………………………3

*In re Midwestern Cos., Inc.*, 55 B.R. 856 (W.D. Mo. 1985)……………………………29

*In re Missionary Baptist Found. of America, Inc.*, 712 F.2d 206 (5th Cir. 1983)…...18, 20

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188 (1984)………………...20, 27

*In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985)………………………………3

*In re Premiere Network Servs.*, 333 B.R. 130 (Bankr. N.D. Tex. 2005)……………44, 45

*In re Ralph Tyler, P.E., P.S., Inc.*, 156 B.R. 995 (Bankr. N.D. Ohio 1993)……………..19

*In re Ridgewood Apartments of DeKalb County, Ltd.*, 183 B.R. 784 (Bkrtcy. S.D. Ohio 1995)……………………………………………………………………………………..19

*Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394 (5th Cir. 2003)……………………………………………………………………………………..31

*In re T-H New Orleans Ltd., P'ship*, 116 F.3d 790 (5th Cir. 1997)……………...18, 24, 25

*United States v. United States Gypsum Co.*,
333 U.S. 364, 92 L. Ed. 746, 68 S.Ct. 525 (1948)………………………………………...2

*In re U.S. Truck Co.*, 47 B.R. 932 (Bankr.E.D.Mich.1985)………………………………19

*In re U.S. Truck*, 800 F.2d 581 (6th Cir. 1986)…………………………………………..44

*Vill. Of San Jose v. McWilliams*, 284 F.3d 785 (7th Cir. 2002)………………………3, 35

## STATUTES & RULES

11 U.S.C. §101………………………………………………………3, 5, 14, 33, 35, 36

11 U.S.C. §105………………………………………………………………………..38

11 U.S.C. §362……………………………………………………………………...42

11 U.S.C. §1121……………………………………………...1, 13, 34, 37, 38, 40, 41

11 U.S.C. §1125………………………………………………………………………..4

11 U.S.C. § 1126…………………………………………………………………9, 46

11 U.S.C. § 1129…………………………………………1, 9, 11, 12, 13, 16, 20, 34, 40

28 U.S.C. § 158………………………………………………………………………1

Bankr.R. 1020…………………………………………………………………………………37

Bankr.R. 8013……………………………………………………………………………..2

Bankr.R. 9023………………………………………………………………………...4, 13, 30

F.R.C.P. 59………………………………………………………………………...4, 13, 30

F.R.C.P. 60…………………………………………………………………………………30

## <u>OTHER AUTHORITIES</u>

Texas Gov't Code §74.053…………………………………………………………..7, 8

Texas Non-Profit Corporation Act, Art. 1396-1.01, TEX. REV. CIV. STAT. ANN……36

7 *Collier on Bankruptcy*¶ 1122.03[4][a] (15th ed. rev.2000))…………………………...44

## STATEMENT OF JURISDICTION

This case is a consolidated appeal from the April 11, 2008 order of the Bankruptcy Court for the Western District of Texas ("Bankruptcy Court"), denying confirmation of the First Amended Plan of Reorganization (Docket No. 131, or "D-131")[1] proposed by Save Our Springs Alliance ("the Debtor" or "S.O.S.") in its Chapter 11 Bankruptcy proceeding, and from several related orders entered by the Bankruptcy Court on various dates,[2] including the August 8, 2008 order dismissing S.O.S.'s Chapter 11 case. D-184.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES

1. <u>Feasibility</u>

a.) Whether the Bankruptcy Court applied the correct legal standard in determining that the Debtor's First Amended Plan was infeasible under 11 U.S.C. § 1129(a)(11), where the Bankruptcy Court found "no evidence" of feasibility, did not apply the multi-factor test for feasibility used by many Courts in this circuit, and imposed an unreasonably high legal threshold for proving feasibility.

b.) Whether the Bankruptcy Court erred in finding that the Debtor did not prove "a reasonable probability of success" in funding the Plan by a preponderance of the evidence.

---

[1] All references in this Brief to docket numbers are to the document numbers assigned on the Bankruptcy Court's docket.  Docket is abbreviated as "D" followed by the docket number.

[2] The other orders appealed are as follows: (1) Order Denying Debtor's Motion for New Trial or to Amend Order Denying Confirmation or, in the Alternative, to Present Additional Evidence on Confirmation entered on June 13, 2008; D-150 (2) Order Denying, as Moot, Debtor's Motion for New Trial or to Amend Order Granting in Part Debtor's Motion to Extend Time to Confirm Debtor's First Amended Plan of Reorganization Pursuant to 11 U.S.C. §§1121(e)(3) and 1129(e) entered on June 16, 2008; D-152 and (3) Order Denying Debtor's Amended Motion to Determine that Debtor is Not a "Small Business Debtor" and Striking Debtor's Amended Petition entered on August 8, 2008. D-183

1

c.) Whether the Bankruptcy Court erred in refusing the Debtor's request to present additional evidence on establishing that Debtor had secured full funding for the Creditor Settlement Fund provided in the Debtor's First Amended Plan.

2.  <u>Small Business Debtor Issues</u>

Whether the Bankruptcy Court erred as a matter of law in the following:

a.) Holding that the Debtor is judicially estopped or equitably estopped from changing its designation as a "small business debtor";

b.) Striking the Debtor's Amended Voluntary Petition because of the Bankruptcy Court's refusal to recognize the Debtor's change of designation from that of a "small business debtor"; and ultimately

c.) Dismissing the Debtor's Chapter 11 case for failure to meet deadlines imposed by the small business debtor provisions of the Bankruptcy Code.

3.  <u>Classification</u>

Whether the Bankruptcy Court erred in holding that the Debtor's First Amended Plan improperly classified Sweetwater Austin Properties, L.L.C.'s ("Sweetwater") unsecured claim separately from general unsecured creditors, where the Debtor identified distinct "non-creditor" interests unique to Sweetwater.

## STANDARD OF REVIEW

Upon review of the Bankruptcy Court's decision, the District Court is authorized to affirm, reverse, modify, or remand for further proceedings. Bankr.R. 8013.  While this rule allows fact findings to be set aside if "clearly erroneous"[3], "when a finding of fact is

---

[3] A factual finding is clearly erroneous when "the reviewing Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948).

premised on an improper legal standard, that finding loses the insulation of the clearly erroneous rule." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1464 (5th Cir. 1991); *see also In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2002) ("the clear error standard does *not* apply to findings of fact resulting from application of an incorrect legal standard"). Thus, an improper legal standard, or a proper one improperly applied, will be reviewed *de novo*. *In re Missionary Baptist Found. of America, Inc.*, 712 F.2d 206, 209 (5th Cir. 1983). Also subject to *de novo* review are the Bankruptcy Court's conclusions of law, *id.*, and mixed questions of fact and law. *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003). When an appellate issue turns on construction of the Bankruptcy Code, it presents a question of law that is reviewed *de novo*. *See e.g. Vill. Of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th 2002).

## STATEMENT OF THE CASE

*Nature of the case, course of proceedings and disposition in the Court below*

As noted above, this case is an appeal of an order denying confirmation of a Chapter 11 plan of reorganization and several related orders, including an order refusing to allow the Chapter 11 Debtor to offer additional evidence to further demonstrate the feasibility of its Plan, an order striking Debtor's Amended Voluntary Petition and refusing to recognize the Debtor's change of its designation as a "small business debtor," and an order dismissing the Chapter 11 case.

S.O.S. filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on April 10, 2007. D-1. In this original Voluntary Petition, S.O.S. indicated that "Debtor is a small business debtor as defined in 11 U.S.C. §101(51D)." On September 19, 2007,

S.O.S. filed its Debtor's Plan Combined With Disclosures for a Small Business Case Pursuant to 11 U.S.C. §1125(f).  D-38.  On October 9, 2007, the Bankrutpcy Court conducted a hearing on the adequacy of the Debtor's Disclosures.  On October 11, 2007, S.O.S. filed its First Amended Plan Combined With Disclosures for a Small Business Case Pursuant to 11 U.S.C. §1125(f).  D-52.

Beginning on November 5, 2007, and continuing on November 7, 8, 15 and 27, 2007, the Bankruptcy Court conducted a contested hearing on confirmation of the First Amended Plan.  By the time the confirmation hearing started, the only party opposing confirmation of the First Amended Plan was an unsecured creditor, Sweetwater Austin Properties, L.L.C. ("Sweetwater"), Appellee and Cross-Appellant in this appeal; S.O.S. had resolved its differences with all its other creditors.  At the end of this hearing on November 27, 2007, the Bankruptcy Court took the confirmation matter and all related issues under advisement.

On April 11, 2008, the Bankruptcy Court entered three orders and issued its Memorandum Opinion on the issues presented at the confirmation hearing.  D-129-132 These included an Order Denying Confirmation of Debtor's First Amended Plan, D-131, and an Order Granting in Part and Denying in Part Debtor's Motion to Extend Time to Confirm Debtor's First Amended Plan.  D-130.  On April 21, 2008, S.O.S. filed motions to alter or amend these last two orders and sought to present additional evidence on the issue of feasibility, pursuant to Bankruptcy Rule 9023 and Rule 59, F. Rules Civ. P.  D-138, 139.  After a hearing, the Bankruptcy Court denied both motions by written orders dated June 13 and 16, 2008.  D-150, 152.  On June 23, 2008, S.O.S. filed its Notice of

Appeal from these orders and from the original Order Denying Confirmation signed April 11, 2008.  D-155.  Sweetwater filed its Notice of Cross-Appeal on July 3, 2008.  D-160.

Sweetwater filed a Motion to Dismiss the Chapter 11 case on June 19, 2008.D-154  On July 15, 2008, S.O.S. filed an Amended Voluntary Petition in which S.O.S. indicated that "Debtor is not a small business debtor as defined in 11 U.S.C. §101(51D)." D-165.  At the same time, S.O.S. filed a Motion to Determine that Debtor is Not a "Small Business Debtor."   D-167.   The Bankruptcy Court conducted hearings on all these matters on July 24, 2008.  On August 8, 2008, the Bankruptcy Court entered one order striking the Amended Voluntary Petition and denying S.O.S.'s Motion to Determine that Debtor is Not a "Small Business Debtor," D-183, another order dismissing S.O.S.'s Chapter 11 case, D-184, and a Memorandum Opinion regarding both of these orders.  D-182.  S.O.S. filed its Notice of Appeal from these orders on August 15, 2008.  D-189.

*Statement of the facts relevant to the issues presented for review*

Save Our Springs Alliance is a nonprofit charitable organization founded in 1992 and organized under the laws of the State of Texas.  Donations to S.O.S. are tax-deductible under Section 501(c)(3) of the Internal Revenue Code. S.O.S. Trial Exhibit 6 (herein "S.O.S. #6"). S.O.S.'s mission is to protect the Edwards Aquifer and the environment of the Texas Hill Country, with special emphasis on the Barton Springs Segment of the Aquifer. S.O.S. #11.  The community-based organization has operated continuously since its founding, growing to over 3,000 members.  S.O.S. #5, Tab A.

S.O.S. relies almost entirely on charitable donations from its members.  *Tr.* at 66. S.O.S.'s annual revenues reached $791,977 in 2004, and $849,117 in 2006, S.O.S. #5, Tab B, Tab C, but have declined with the cloud of bankruptcy over the organization.

During its fourteen year history prior to this case, S.O.S. had no involvement with the bankruptcy courts.  *Tr.* at 148, 475-76

From its founding in 1992, S.O.S.'s charitable work has included the filing of citizen enforcement actions against public agencies, and on occasion private corporations, which S.O.S. believes are acting in violation of applicable environmental protection or open government laws.  *Tr.* at 428 *et seq.*  In late 2004, two out-of-town visiting judges assessed large attorney fee awards against S.O.S. in two such citizen enforcement actions brought by S.O.S. in state district court to protect the Barton Springs and Lake Travis watersheds.  S.O.S. # 5, p. 5.  These adverse fee awards were unprecedented in S.O.S.'s twelve prior years of conservation advocacy.  *Tr.* at 522.  S.O.S. appealed both judgments to the Third Court of Appeals of Texas.

The first case, *Save Our Springs Alliance vs. City of Dripping Springs, et al.*, was settled in part.  The remainder of the case is pending before the Third Court of Appeals of Texas.[4]  The other case, *Save Our Springs Alliance, Inc. vs. Lazy Nine Municipal Utility District, et al.*,[5] was transferred to the Texarkana Court of Appeals (for case load management purposes).  That court modified some of the trial court's rulings, but upheld the fee award against S.O.S.  *See* 198 S.W.3d 300.  S.O.S. sought further discretionary review in the Supreme Court of Texas, which in early 2007 refused to hear the case.

_____

[4] This case involves state constitutional and Texas Open Meetings Act claims concerning two developer agreements with the City of Dripping Springs.

[5] In this case, S.O.S. Alliance challenged a Municipal Utility District ("MUD") created for the Sweetwater development in western Travis County.  Specifically, S.O.S. Alliance claimed that the Texas Legislature created the MUD without first providing notice to Travis County and the public as required by the Texas Constitution, and that the MUD legislation delegated public, governmental powers to a private developer in violation of the state constitution.

The resulting judgment in favor of Lazy Nine Municipal Utility District ("MUD") et al. (since assigned to MUD developer and Appellee/Cross-Appellant Sweetwater Austin Properties, LLC) totaled $264,000.00, plus accrued post-judgment interest and court costs. *See* S.O.S #3.  When efforts to negotiate a resolution of the judgment failed, and Sweetwater refused to assure S.O.S. that it would not force collections, S.O.S.'s board of directors elected to file a Chapter 11 petition to protect the assets of S.O.S. from seizure and for reorganization. S.O.S. #5, p. 5.

On April 10, 2007, S.O.S. filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  D-1.  Since that date, the Debtor has conducted its affairs and managed its assets as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

At the time of its Chapter 11 filing, the assets of S.O.S. consisted of cash and general depository accounts totaling $10,309.26; tangible personal property (mainly miscellaneous office items) totaling $9,345.00; funds in a Restricted Education Grant Account; and a real property conservation easement, a logo, website, and name of little to no liquidation value. S.O.S.'s liabilities totaled $774,527.45, including the two adverse attorney fee awards.  S.O.S. #3.

Shortly after filing for bankruptcy, S.O.S. discovered that the visiting judge assigned to the 2004 Lazy Nine MUD case—whose assignment S.O.S. objected to at trial—had been defeated in his last election prior to becoming a visiting judge.  Under Texas law, such objections to judge assignments operate as automatic "strikes" or vetos where the assigned visiting judge was removed from office by voters. Texas Gov't Code §74.053(d). Yet the presiding visiting judge had refused to step aside.  S.O.S. sought the

assistance of outside counsel, who determined that, under the circumstances, the Lazy

Nine MUD judgment was void and could be challenged post-final judgment.

As part of its Disclosures concerning designated "Class 4" unsecured creditors,

S.O.S. noted in its Plan that it intended to challenge Sweetwater's judgment of attorney's

fees in state court.[6]  On September 26, 2007, S.O.S. filed an Application to Employ

Special Counsel, D-44, a step required by the Bankruptcy Code before S.O.S. could

pursue the void judgment issue in the state courts.  The bankruptcy court heard this

matter on October 1, 2007, but did not rule on the request.  Despite repeated urgings by

Debtor, the Court did not authorize Debtor to challenge the void judgment until March 24

2008.  D-125.

As proposed, Debtor's plan for reorganization classified claims and interests as

follows:

      Class 1—Ad Valorem Travis County Tax Claim;
      Class 2—Secured Claim of Kirk Mitchell;
      Class 3—Priority Wage Claims of S.O.S. employees;
      Class 4—Unsecured Claim of Judgment Creditor Sweetwater Austin Properties;
      Class 5—Unsecured Claims of Judgment Creditors Cypress-Hays and Mak
      Foster; and
      Class 6—General Unsecured Claims.

As S.O.S. had limited resources and assets, relying primarily on voluntary

charitable donations to fund its operations, the primary component of Debtor' plan

---

[6] Section 4.4 of the First Amended Plan provides: "S.O.S. Alliance may challenge in state court the adverse judgment of attorney's fees rendered by visiting Judge Bill Bender in the 2004 trial of *Save Our Springs Alliance, Inc. v. Lazy Nine Municipal District*. S.O.S. has discovered that this judge was subject to mandatory disqualification and that his judgment is void as a matter of law, under TEX. GOV'T CODE §74.053(d). Rosell v. Central West Motor Stages, Inc., 89 S.W.3d 643, 650-51 (Tex. App.—Dallas, 2002, pet. denied); see In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998). If a judge is subject to disqualification under §74.053(d), he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to attack at any time. Judge Bender may have been disqualified to hear the cases for other reasons as well. S.O.S. Alliance may file a motion or suit in state court to set aside the void judgment, which is wholly proper under Texas law, even though this matter was not raised during any appeal."

proposed a special Creditor Settlement Fund of $60,000 to be funded within sixty days of

plan confirmation and distributed *pro rata* to its unsecured creditors in Classes 4, 5, and

6.  S.O.S. #5.  In a key provision giving extraordinary protection to creditors in the event

that the Debtor defaulted on its obligations, Article X of the Plan provided a procedure

whereby the Debtor's discharge would be revoked and its creditors' claims would be

reinstated in full. *Id.*

Before the voting deadline of November 2, 2007, the Debtor was able to reach

settlements with judgment creditors Cypress-Hays and Mak Foster (Class 5) from the

2004 City of Dripping Springs litigation.  Applications to compromise and settle the

Cypress-Hays and Mak Foster claims were approved by the court.  D-85, 89.

S.O.S.'s proposed plan placed Sweetwater in its own class because of its unique

circumstances.  These circumstances included S.O.S.'s conflicts with the Sweetwater

developers on other development issues in the Texas Hill Country, on the unique fact of

S.O.S. seeking to challenge Sweetwater's judgment against S.O.S. as void, and on S.O.S.

antagonism with Sweetwater during its failed efforts to negotiate a compromise with

Sweetwater on its fee claim.  Debtor also formally objected to Sweetwater's claim, D-61,

and filed a Motion to Designate Sweetwater as voting in bad faith, pursuant to 11 U.S.C.

§ 1126(e).  D-57.

On October 31, 2007, the Debtor filed a Motion to Extend Time to alleviate the

potential effect of the 45-day deadline for confirmation that was triggered by filing the

Plan as a small business case.  *See* 11 U.S.C. § 1129(e).D-59 The Court would later

orally rule on the first day of the confirmation hearings that the 45-day deadline would be

extended through the whole trial to allow the Court to fully consider all of the evidence. *Tr.* at 129.[7]

On November 2, 2007, Sweetwater filed written objections, arguing *inter alia* that the Debtor's Plan was not proposed in good faith, did not meet the best interests of creditors, was not feasible, and improperly classified the unsecured creditors separately in Classes 4, 5, and 6 so as to obtain the vote of an impaired class. D-172.

Upon the bankruptcy court's oral approval of the Debtor's settlements with judgment creditors Cypress-Hays and Mak Foster, Class 5 voted to accept the Plan. *Tr.* at 12, 16. Classes 2, 3, and 6, all of which were impaired, also voted to accept the Plan. *See* S.O.S. #1. As expected, Sweetwater voted to reject the Plan, remaining the sole hostile, impaired creditor. *See id.* A lengthy trial ensued, with testimony and argument continuing through November 7, 8, 15 and 27, 2007. The trial concluded with Judge Gargotta taking confirmation and several related matters under advisement.

During the course of the trial, Debtor focused its presentation of evidence and argument on addressing Sweetwater's primary argument that S.O.S.'s plan was not offered in good faith or in the best interests of the creditors because S.O.S. could—and should be required to—pay creditors substantially more on their claims, if not 100 percent. This case included showing that while S.O.S. had a long and reliable record of raising substantial funds for its conservation work, the vast majority of these funds were from voluntary donations. *Tr.* at 66. Since S.O.S. does not sell goods or services, it must rely on the good will of its donors. S.O.S. donors were reluctant to give their money to pay off large sums to judgment creditors, especially those hostile to S.O.S.'s mission of

---

[7] All references to the trial transcript refer to the sequentially paginated transcript of the confirmation hearings before the bankruptcy court. This transcript, composed of five volumes, is in the case file for this appeal before the District Court.

protecting the Hill Country.  *Tr.* at 66, 70.  Donations to S.O.S. had dropped significantly, especially from major donors, because of the uncertainty resulting from the adverse judgments and then, finally, by the bankruptcy filing.  *Tr.* at 148, 475-76.  Caught in this conflict between its corporate mission and its financial obligations to its creditors, and subject to the good will of its donors, S.O.S.'s board of directors and staff, after a great deal of research and deliberations, decided on its proposed plan as representing the best balance between what it owed its creditors and what it could reasonably expect from its donors.  *See* Sweetwater Trial Ex. 12 (herein "SR #12"), Minutes of S.O.S. Board meetings of April 17, May 25, June 7, and June 12, 2007.

Although Sweetwater principal Bill Gunn admitted in testimony that "if S.O.S. wants to make a better offer or to pay that they can do so," *Tr.* at 600,  Sweetwater did not withdraw its contradictory claim that while S.O.S. could and should be required to pay its creditors much more, it had not shown evidence that S.O.S. could pay for the $60,000 Creditor Settlement Fund, and thus S.O.S. plan was not "feasible." S.O.S. representatives testified that it had firm pledges for $20,000 of the $60,000 and that, upon confirmation of a plan, this would give sufficient certainty to S.O.S. donors on S.O.S.'s future that they would donate to fund the approved plan.  *Tr.* at 319, 474-75.

On April 11, 2008, the court entered several orders on matters related to the trial on confirmation of the Debtor's Plan, including an Order Denying Confirmation of Debtor's First Amended Plan and a supporting Memorandum Opinion.  D-131, 132. Among its findings, the Bankruptcy Court overruled several of Sweetwater's objections, holding that Debtor's Plan (1) met the "best interests of creditors" test, as required by 11 U.S.C. § 1129(a)(7); (2) was "fair and equitable" to the creditors, including Sweetwater,

as required by § 1129(b)(2)(B); and (3) was proposed in "good faith," as required by § 1129(a)(3).  The court also found there was an "impaired class" accepting the plan, as required by § 1129(a)(10), and thus "cramdown" of Sweetwater's objecting claim was supported by the law and the facts.

However, on one critical element, the court ruled against Debtor in holding that the Debtor had not shown "feasibility" of its plan.  *Mem. Op.* at 52-56.  The court also ruled against Debtor on two other non-essential points.  First, it denied the Debtor's motion to have Sweetwater's vote designated in bad faith.  *Id.* at 36-41.  Second it held that Sweetwater's Class 4 claim had been improperly classified separately from S.O.S's. General Unsecured Creditors (Class 6).  *Id.* at 51.   But for the Bankruptcy Court's holding as to feasibility, the Debtor's Plan would have been confirmed under the Bankruptcy Code's Chapter 11 "cramdown" provision found in 11 U.S.C. § 1129(b).[8]

Reaching the deadline issues governing small business cases, the bankruptcy court considered the Debtor's Motion to Extend Time, which had sought extensions to the 45-day deadline for obtaining confirmation.  *See* 11 U.S.C. § 1129(e).  D-59.  First, the court held that its oral ruling at the confirmation hearing, which had granted in part Debtor's Motion to Extend Time, had been proper for the limited purpose of allowing the court to consider all evidence presented at trial and issue a ruling regarding confirmation. *Mem. Op.* at 34-35.  However, based on its written order denying confirmation and after consideration of all the evidence presented at trial, the court ruled that the Debtor had not

---

[8] Although the Bankruptcy court held that Sweetwater's Class was improperly gerrymandered, the Court also held that Class 5 (Cypress-Hays and Mak Foster) was a proper class and therefore constituted an "impaired assenting class" satisfying 1129(a)(10), without even considering other impaired classes in the Plan.   The court reasoned that because the settlements with Cypress-Hays and Mak Foster (Class 5) occurred after the Debtor filed its Plan, and without such settlements Class 5 would have voted to reject the Plan, the Court held that "given the parties' positions at the time of the Debtor's initial proposal of its classification scheme, its motive was to gerrymander the vote so that the vote of Class 6 would satisfy the requirement of an impaired accepting class."  Mem. Op. at 50, fn 20.

met its burden under § 1121(e) to show that confirmation of its First Amended Plan was more likely than not. *Id.* at 35. Thus, the court denied in part the Debtor's Motion to Extend Time and refused to extend the 45-day deadline any further. *Id.* The court also ruled that for the purposes of calculating the 45-day deadline, the starting point would be the filing of the Debtor's Original Plan rather than the First Amended Plan. *Id.* at 29.

On April 21, 2008, the Debtor timely filed a Motion for New Trial or to Alter or Amend Order Denying Confirmation of Debtor's First Amended Plan, or in the Alternative, to Present Additional Evidence on Confirmation of Debtor's First Amended Plan. D-138. This motion was made pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59. Although the Debtor was certain that it had carried its burden at trial to show feasibility by a preponderance of the evidence, the Debtor's Motion to Amend Order Denying Confirmation sought to present additional evidence on the feasibility issue. The motion was supported by an affidavit of S.O.S. Executive Director Bill Bunch, stating that S.O.S. could present evidence that it had raised sufficient funds for the entire proposed Creditor Settlement Fund. D-138.

Along with the Motion to Amend Order Denying Confirmation, the Debtor filed a Motion to Alter or Amend Order Granting In Part Debtor's Motion to Extend Time to Confirm Debtor's First Amended Plan of Reorganization, Pursuant to 11 U.S.C. §§ 1121(e)(3) and 1129(e) ("Second Motion to Extend Time"). D-139. The relief sought in this motion was to extend the 45-day deadline further to allow the Judge's ruling on the Debtor's Motion to Amend Order Denying Confirmation to be meaningful and effective.

The Debtor's Motion to Amend Order Denying Confirmation was overruled by the bankruptcy court by written order dated June 13, 2008.  D-150.  On the same day, the court denied the Debtor's Second Motion to Extend Time as moot.  D-152.

On June 19, 2008, Sweetwater filed a Motion to Dismiss, asserting *inter alia* that all relevant deadlines had run and that Debtor had failed to have its Plan confirmed within those deadlines.  D-154.

On June 23, 2008, the Debtor timely filed a Notice of Appeal from this Court's Order Denying Confirmation of Debtor's First Amended Plan and from certain of the Court's other rulings in the various orders dated April 11, 2008.  D-155.  Sweetwater filed a Notice of Cross-Appeal on July 2, 2008.  D-160.

On July 15, 2008, the Debtor filed an Amended Motion to Determine that Debtor Is Not a "Small Business Debtor" As Defined in 11 U.S.C. § 101(51D) And That This Case Is Not a Small Business Case as Defined in 11 U.S.C. § 101(51C).  D-167.  S.O.S.'s position was and is that it had, by mistake, designated itself a "small business" under the bankruptcy code and that S.O.S. was not, in fact, a "small business" because it was a not-for-profit charity that did not pursue "commercial" or "business" activities.  On the same day, S.O.S. filed an Amended Voluntary Petition in which S.O.S. changed its designation to read that "Debtor is not a 'small business debtor' as defined in 11 U.S.C. § 101(51D).  D-165.

After conducting a contested hearing involving the Debtor's Amended Motion to Determine that Debtor is Not a Small Business Debtor and Sweetwater's Motion to Dismiss, the bankruptcy court entered an order on August 8, 2008 denying the Debtor's Amended Motion and Striking Debtor's Amended Petition.  D-183.  On the same day, the

court entered an order granting Sweetwater's Motion to Dismiss.  D-184.  The court also issued an August 8, 2008 Memorandum Opinion concerning these matters.  D-182.  The court's primary holding in its August 8th Memorandum Opinion was that the Debtor was judicially and equitably estopped from changing its small business debtor designation. *See id.*

The Debtor timely filed its Notice of Appeal from the bankruptcy court's August 8th orders granting Sweetwater's Motion to Dismiss and denying the Debtor's Amended Motion and Amended Petition that sought to change the small business debtor designation.  D-189.  The Debtor also filed a Motion for Stay, Pending Appeal, Of Order Granting Sweetwater's Motion to Dismiss Case.  D-192.  The Bankruptcy court orally granted the Debtor's Motion for Stay Pending Appeal.  It was later determined that no bond would be necessary for the Stay.

Shortly after the Bankruptcy Court's granting of the Debtor's Application to Employ Special Counsel on March 24, 2008, outside counsel for S.O.S. filed a complaint in Travis County District Court challenging the judgment underlying Sweetwater's claim. After the bankruptcy appeals argued herein were perfected, docketed, and consolidated, the 250th Judicial District Court of Travis County, Texas entered a Final Judgment determining that the judgment of attorney's fees underlying Sweetwater's claim "is void and of no force and effect."  Sweetwater and Lazy Nine MUD's various successor utility districts have perfected an appeal to the Third Court of Appeals of Texas.  For now, this case rests in the anomalous posture that the sole objecting creditor and the only creditor that triggered S.O.S's Chapter 11 filing has only a voided judgment to support its claim.

**ARGUMENT**

For a Chapter 11 Plan to be confirmed, the requirements of 11 U.S.C. § 1129 must be met.  The Debtor's burden of proof is to show that its reorganization is confirmable by a preponderance of the evidence.  *Heartland Federal Savings & Loan Assn. v. Briscoe Enterprises, Ltd., II (In re Briscoe Enterprises, Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993), cert. denied, 510 U.S. 992.  This standard of proof, rather than some higher standard such as clear and convincing evidence, applies whether confirmation is sought through meeting all the elements of § 1129(a) or through the "cramdown" provision of § 1129(b).  *Id.*  The "cramdown" provision allows the Bankruptcy Court to confirm a reorganization plan over the objection of an impaired class if the Debtor satisfies all requirements of § 1129(a) other than § 1129(a)(8).  11 U.S.C. § 1129(b)(1).  Confirmation under "cramdown" also requires that the Debtor's Plan be fair and equitable to, and not unfairly discriminate against, the non-accepting class.  *Id.*

> **I.**    **The Bankruptcy Court Applied an Improper Legal Standard to Determine Feasibility, Erroneously Found that the Debtor's Plan Was Not Feasible, and Abused Its Discretion in Refusing to Accept Additional Evidence on Feasibility**

"Feasibility" means that the Debtor must show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  Feasibility must be proved by a preponderance of the evidence.  *In re Briscoe Enterprises, Ltd., II*, 994 F.2d at 1165.

Upon review of the Bankruptcy Court's ruling in this case, the Debtor was shocked to learn that its Plan had been denied on feasibility grounds. Throughout trial, Sweetwater's primary attack sought to show that S.O.S. could easily pay far more money than its plan proposed, and thus S.O.S. plan was not offered in "good faith." Sweetwater's "feasibility" argument seemed to be a throw away, in direct contradiction to its insistence that S.O.S.'s plan shortchanged creditors.

During trial Sweetwater's Managing Partner William Gunn directly admitted that the Debtor could raise the funds: "*Yes I do believe that they—if S.O.S. wants to make a better offer or to pay that they can do so*." *Tr.* at 600 (emphasis added). Judging from Mr. Gunn's testimony, Sweetwater never believed its own feasibility argument but merely threw it in as one element in its "kitchen sink" challenge to the Debtor's Plan.

S.O.S. also presented substantial, undisputed evidence—in a fairly lengthy confirmation trial lasting five days—showing its past, current, and likely future fundraising abilities and financial operations. The Bankruptcy Court's conclusion that the Debtor had presented "no evidence" on feasibility simply does not square with the relevant law or facts.

As set out below, because the Bankruptcy Court applied an improper legal standard, its finding on feasibility should "lose the insulation of the clearly erroneous rule" and be subject to *de novo* review. *See In re Missionary Baptist Found. of America, Inc.*, 712 F.2d at 209. However, even if reviewed under the clearly erroneous standard, the relevant evidence establishes error in the trial court's ruling. Alternatively, the Bankruptcy Court abused its discretion in refusing to allow the Debtor to present additional evidence on feasibility after the confirmation hearings. This Court should

reverse the Bankruptcy Court's determination of feasibility, overrule Sweetwater's objection, and enter an order confirming the Debtor's First Amended Plan.

> i.   The Bankruptcy Court Applied an Improper, Insuperable Legal Standard for Feasibility, and Disregarded a Multi-Factor Test Commonly Used by Courts in this Circuit

As a matter of law, the Bankruptcy Court imposed an insurmountable burden to confirmation by effectively holding that feasibility could only be demonstrated by having the entirety of the $60,000 Creditor Settlement Fund in hand at the time of the confirmation hearings. *See Mem. Op.* at 52-56.   Imposition of this standard resulted in the Bankruptcy Court's erroneous legal conclusion that the Debtor had presented "no evidence" of feasibility. *See id. at* 53.

The Debtor is aware of no authority in this jurisdiction requiring feasibility to be demonstrated to the degree of certainty or specificity that the Bankruptcy Court seemed to require, as such a standard would seem to be flatly incompatible with the Debtor's "more likely than not" burden.   Significantly, in the course of setting its own legal standard for feasibility, the Bankruptcy Court disregarded a multi-factor test for feasibility that is well established in the Western District and Fifth Circuit case law.

The Bankruptcy Court's Memorandum Opinion starts out by correctly quoting the overall standard for feasibility as: "All the Bankruptcy Court must find is that the plan offers 'a reasonable probability of success.'" *In re T-H New Orleans Ltd., P'ship*, 116 F.3d 790, 801 (5th Cir. 1997), quoting *In re Landing Associates, Ltd.*, 157 B.R. 791, 819 (Bankr. W.D. Texas 1993).   Indeed, it is well established that the legal standard for feasibility imposes a low threshold. *See e.g. Berkeley Federal Bank & Trust v. Sea Garden Motel and Apartments* (*In re Sea Garden Motel and Apartments*), 195 B.R. 294,

18

305 (D.N.J. 1996) ("it is clear that there is a relatively low threshold of proof necessary to satisfy the feasibility requirement"); *In re Briscoe Enterprises, Ltd., II*, 994 F.2d at 1166 (upholding Bankruptcy Court's finding of feasibility where Plan had a "marginal prospect of success").

Upon application of the law to the facts, however, the Bankruptcy Court eviscerates the "reasonable probability" standard, replacing it with a standard of "firm commitment of financing." Quoting from a case with inapposite facts, the Memorandum Opinion holds that "[w]ithout evidence of a firm commitment of financing, [a] Plan does not meet the feasibility requirement for confirmation." *Mem. Op.* at 53, quoting *In re Ralph Tyler, P.E., P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993). It is difficult to see how this sentence constitutes the rule for feasibility, when authority from another Ohio Bankruptcy Court recognizes that satisfaction of the feasibility requirement "does not require proof that meeting the economic projections is certain." *In re Ridgewood Apartments of DeKalb County, Ltd.*, 183 B.R. 784, 789 (Bkrtcy. S.D. Ohio 1995) (citing *In re U.S. Truck Co.*, 47 B.R. 932, 944 (Bankr.E.D.Mich.1985), aff'd, 800 F.2d 581 (6th Cir.1986).

Elevating the "commitment of firm financing" standard to the determinative test for feasibility, the Bankruptcy Court at the same time disregards the multi-factor test from several leading Texas Bankruptcy Court cases recognizing as relevant:

> ". . . (1) the adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan."

19

*In re M & S Assocs., Ltd.* 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992); *Landing Assocs., Ltd.*, 157 B.R. at 819; *see also In re Lakeside Global, L.L.C. II*, 116 B.R. 499, 507 (Bankr. S.D. Tex. 1989) ("the multi-factor test").

As recognized by one of the cases applying the multi-factor test:

> No plan can offer certainty, and it is unreasonable for [the objecting creditor] to expect it. What the plan does offer is a reasonable probability of success, and that is all the law requires the Court to find under section 1129(a)(11).

*Landing Assocs., Ltd.*, 157 B.R. at 820.

The Bankruptcy Court made no mention of this multi-factor test in its Memorandum Opinion, and judging from its view that the Debtor presented "no evidence" to support feasibility, one is left with the unavoidable conclusion that the bulk of the evidence evaluated in the multi-factor test was wholly excluded from consideration because of the use of an improper legal standard.


  ii. <u>The Bankruptcy Court Clearly Erred in Determining that the Debtor Had Not Shown the Plan's Feasibility by a Preponderance of the Evidence</u>

After reciting that feasibility only requires a "reasonable probability of success," and summarizing the applicable evidence, the Bankruptcy Court states, with respect to the proposed $60,000 Creditor Settlement Fund, that the Debtor:

> ". . . offered no evidence at the hearing to show that it *could* meet that obligation—no commitments, *no* evidence of past performance, *nothing*. On the contrary, Kirk Mitchell testified that as of the date of the hearing he had expressly *not* agreed to contribute any amount to be used to fund the Creditor Settlement Fund."

*Mem. Op.* at 53 (emphasis in original).

The Court further states that "S.O.S.'s evidence at the trial regarding the availability of the monies to fund the $60,000 Creditor Settlement Fund under the plan was limited to [S.O.S. Board Member and Contributor] Mr. [Ray] Goodrich's testimony that he had committed $12,500 for that purpose, and Mr. Mitchell's [S.O.S. contributor] testimony that he had not agreed to donate anything for that purpose." *Id.* at 55. This point was apparently determinative for the Court, in that it is repeated in the summary of evidence:

- "Goodrich acknowledged that, as of the confirmation hearing, S.O.S. had not raised any amount, other than his $12,500 commitment, needed for the Creditor Settlement Fund." *Mem. Op.* at 14.

- "Significantly Bunch corroborated Goodrich's testimony that S.O.S. had only collected $12,500 of the $60,000 needed to fund the Creditor Settlement Fund and, despite S.O.S.'s requests of its regular donors, donors had been nonresponsive to its plea for funds to be used to pay off its judgment creditors." *Mem. Op.* at 18.

- "According to Bunch, S.O.S. does not have the ability to pay its attorneys and other creditors at the same time." *Mem. Op.* at 19.

The Court's summary of the relevant evidence is neither complete nor accurate. Rather than showing only $12,500 committed to the Plan, as summarized by the Court's opinion and which Mr. Goodrich testified to on the first day of hearing, both Ms. Pat Brodnax, S.O.S. Managing Director, and Mr. Bunch testified that Debtor had secured pledges of $20,000, or one-third of the $60,000 Creditor Settlement Fund. *Tr.* at 319, 474. The additional funds were pledged during a short amount of time and with only asking S.O.S. board members, further demonstrating the Debtor's ability to fund the Plan.

21

While the Memorandum Opinion states that S.O.S. was to fund the Plan only from donations given specifically for the fund, Mr. Bunch actually testified that the organization would likely fund the Plan from a combination of donations specifically dedicated to the Creditor Settlement Fund and from general donations.  *Tr.* 476. Similarly, the Court misinterpreted Mr. Bunch's testimony in finding that: "According to Bunch, S.O.S. does not have the ability to pay its attorneys and other creditors at the same time." *Mem. Op.* at 19.  As explained in Mr. Bunch's testimony, S.O.S. has traditionally had a mutual understanding with its outside attorneys and technical experts that payment will be made over time, balancing these obligations with S.O.S.'s monthly demands of meeting payroll.  *Tr.* at 486.  Notably, Class 6 (mainly trade creditors of the Debtor) voted for the Plan.  *See* S.O.S. #1, Ballot Summary.  And while the evidence shows that the Debtor's counsel in bankruptcy, Weldon Ponder, had agreed to be paid after the Settlement Fund was fully funded, and to cap his reduced rate fees (*Tr.* at 485), there is no evidence indicating that Debtor could not both satisfy the terms of the Creditor Settlement Fund and pay Mr. Ponder.  In fact, Ms. Brodnax testified that S.O.S. would fundraise, as it always has, to pay Mr. Ponder.  *Tr.* at 179.

In considering the multi-factor test set out above in the context of this specific Plan and the Debtor's unique status as a not-for-profit organization, which relies primarily on voluntary contributions, there is substantial evidence in the record that supports a finding that S.O.S.'s Plan had "a reasonable probability of success."

(1) The Adequacy of the Debtor's Capital Structure.  While this Debtor's "capital structure" is extremely limited, what is clearly relevant to Debtor's likelihood of success is its 15 years of growing its donor base to support a full-time, professionally-staffed

office. *See* S.O.S. #5, *First Amended Plan, Att. A. Summary of Organization and Activities, Att. B IRS Form 990 for 2004, and 2005*.   That many years of support from donors, both large and small, shows that S.O.S. is no "fly-by-night" operator.   The evidence also shows that the triggering of S.O.S.'s Bankruptcy was an extreme rarity of adverse attorney fee awards (*Tr.* at 522) caused by a pleading error (*Tr.* at 524), and thus not likely to be repeated.

In the unique context of this Debtor's non-profit organization, "capital structure" is perhaps most usefully thought of in terms of the Debtor's fundraising abilities, of which there was substantial evidence at trial.   For example, the Debtor's fundraising summaries showed over $800,000 in combined contributions income and event income in 2006, and over $300,000 in 2007 through the time of trial.  *See* S.O.S. # 5, *Att. I.*  The Debtor's *fundraising event income alone* totaled over $30,000 in 2006, and over $50,000 in 2007.  *See id.*  The Debtor's projections for 2008 predicted over $500,000 in combined contributions income and event income.  *See id.* at *Att. K.*

Ms. Brodnax testified extensively as to the nature of the Debtor's financial operations.  Explaining what Sweetwater portrayed as revenue shortfalls, Ms. Brodnax testified that the Monthly Operating Reports were misleading in that they did not show restricted funds.  *Tr.* at 157.  She also testified how the Reports were structured to include payroll at the end of a particular month, when in practice S.O.S. often covers payroll at the beginning of the next month.  *Id.* at 158.  Finally, both Ms. Brodnax and Mr. Bunch testified as to how it is typical for non-profits such as S.O.S. to receive the bulk of its funds and donations at the end of the year, which was yet to come at the time of the confirmation hearings.  *Tr.* at 127, 476.  Despite all this evidence showing the Debtor's

solid fundraising ability and explaining the nuances of its non-profit organization, the Bankruptcy Court concluded: "[The Debtor's] Monthly Operating Reports filed in its bankruptcy case, however, paint a dimmer picture of its current and future ability to raise funds." D-150 at 7.

(2) The Earning Power of the Debtor's Business; (3) Economic Conditions. In analysis under the second feasibility factor, it is clear that Bankruptcy Courts may consider the earning power of the debtor's business *after the reorganization. See T-H New Orleans Ltd. P'ship*, 116 F.3d at 801 (discussing lower Court's findings). This factor is particularly important in light of Mr. Bunch's testimony on S.O.S.'s "chicken-and-egg" problem. Based on feedback from S.O.S.'s donors, Mr. Bunch testified that S.O.S. supporters would readily contribute to the Creditor Settlement Fund, provided that the contributors had some assurance of the specific amount owed and that the reorganization of S.O.S. would be successful. *Tr.* at 474-75. Thus, plan confirmation was important to securing the remainder of the funds needed for the plan.

In the context of this non-profit organization and the Plan's Creditor Settlement Fund, the inescapable facts were that confirmation of the Plan would, more than any other external factor, guarantee the Plan's feasibility. That factor distinguishes this case from traditional reorganization cases involving for-profit companies selling goods and services that do not rely upon the charity and good will of donors but who only need to show that their goods and services meet customer needs. Likewise, while economic conditions surrounding non-profits can be volatile depending on the overall economy, Mr. Bunch's testimony established that the S.O.S.'s economic condition was likely to improve substantially following a successful reorganization.

Debtors are not required to view business and economic concerns in the worst possible light, *T-H New Orleans Ltd., P'ship*, 116 F.3d at 802, and here there was a sound basis for concluding that the Creditor Settlement Fund would be eminently feasible after court approval of S.O.S.'s proposed plan.

(4) The ability of the debtor's management; (5) The probability of the continuation of the same management.  The evidence shows that S.O.S. has experienced business people on its board of directors, that the entire board, with one exception, intended to continue serving on the S.O.S. board (*Tr.* at 692), that Ms. Brodnax, as S.O.S.'s managing director had been with the organization for nine years (*Tr.* at 89), that Mr. Bunch, as executive director, had been with the organization from its founding in late 1992 (*Tr.* at 421-22), and that the organization had maintained its tax-exempt status with the IRS for its 15-year existence by filing its required annual reports and complying with all laws applicable to a 501(c)(3) tax-exempt charitable corporation. *See* S.O.S # 6*, Letter from IRS confirming 501(c)(3) status;* S.O.S # 5*, Att. B IRS Form 990 for 2004 and 2005.*

The evidence showed that the Debtor had demonstrated fiscal responsibility by scaling back its operations (although not so far as its Board judged would unduly compromise its charitable mission and its ability to raise funds) in light of reduced funding resulting from program setbacks and the potential for bankruptcy.  *Tr.* at 456. The Debtor's ability to settle its differences with all of its creditors except one— including with two developers the Debtor had sued for claimed violations of state open government and land use laws—also demonstrates the Debtor's commitment and management ability to achieve the success of its proposed Plan.

In many regards, S.O.S. has also been a model debtor-in-possession during its Bankruptcy proceedings.  During bankruptcy, the Debtor has filed all Monthly Operating Reports on time and paid all quarterly fees to the U.S. Trustee.  *Tr.* at 100.  Despite the adverse circumstances, the Debtor prosecuted its bankruptcy case diligently, continued to raise money to pay its monthly bills, payroll and overhead, and continued serving the public interest in its conservation work.

(6) <u>Any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan</u>.  The Debtor's continued support from both its large and small donors while operating in bankruptcy also should have been considered as evidence of Debtor's likelihood of success in fulfilling its plan. *See* S.O.S. # 5, Att. D Debtor's Monthly Operating Reports for April through August, 2007.

All of this evidence was excluded from consideration by the Bankruptcy Court's insistence that there was "no evidence" and "nothing" indicating that S.O.S. had shown a "reasonable probability" of fulfilling the plan and by the Court's failure to acknowledge the multi-factor test.  While the Bankrupty Court did recognize that "past performance" was relevant, it incorrectly insisted that there was "no evidence of past performance," *Mem. Op.* at 53, when the record clearly showed several years of S.O.S. successfully raising more than $750,000 annually. S.O.S. #5, Tabs B and C. Considering the applicable multi-factor test and the evidence relevant to those factors, the Bankruptcy Court's finding that there was not "a reasonable probability of success" constitutes reversible error.

In contrast to other cases finding a Plan to be infeasible, the Debtor here identified the relevant source of the Plan's funding (specifically earmarked donations combined with general donations), and proved a "reasonable probability of success" with examples of specific, independent sources. *Compare M & S Assocs., Ltd.* 138 B.R. at 850 (Plan held infeasible where general partner of Debtor "admitted that the Debtor has no other source of income other than the net cash flow generated by the Apartments, that he does not anticipate the availability of any other source of funding, and that the Debtor cannot make principal reductions except from net cash flow.")

Of particular importance, the Court's Memorandum Opinion fails to address two critical factors that support a conclusion that Debtor is likely to succeed in funding its Plan. First, Mr. Goodrich and Ms. Brodnax testified (and there was no controverting evidence offered by Sweetwater) that the bankruptcy of S.O.S. had put a cloud over the organization's usual fundraising abilities, such that S.O.S. supporters (especially large donors) were reluctant to give. *Tr.* at 66, 70, 148. As Mr. Bunch testified, upon confirmation, funding the Plan would be feasible, and following this performance of the Plan, S.O.S. would be able to continue its conservation work and pay its bills. *Tr.* at 485-86.

The Bankruptcy Court discounts the Debtor's evidence regarding feasibility as "sheer speculation and wishful thinking." *Mem. Op.* at 56. In fact, Mr. Bunch, as the long-time Executive Director of S.O.S. with the best knowledge of the organization's fundraising capabilities, is the most reliable source of evidence for establishing the success of the reorganization plan. In another Texas Bankruptcy case, this sort of *uncontroverted testimony alone* was sufficient to establish feasibility:

> In this case the Debtor testified, without any controverting testimony or evidence from the [objecting creditor], that the value of the shares to be transferred under the Plan to the [objecting creditor] is higher than the value, as of 2000, placed on those shares by the jury in the district Court litigation. The Debtor also testified that the value will continue to grow and that it is his plan to sell Asgaard when the value of Hard Radio is maximized after further development of the web site. Because the Debtor's testimony regarding the continued growth in the value of the Asgaard stock was both credible and uncontroverted and because the Debtor appears to have a sound business plan regarding Hard Radio, the Court finds that it is not likely that this Debtor's plan will be followed by a liquidation or further reorganization . . .

*In re Barnes*, 309 B.R. 888, 895 (Bankr. N.D. Tex. 2004).  In this case the case is even stronger: rather than controvert S.O.S.'s evidence, Sweetwater principal Bill Gunn confirmed it by agreeing that S.O.S. could pay for the plan.

The second critical factor overlooked by the Bankruptcy Court is that Mr. Goodrich and Mr. Bunch both testified to the detailed analysis of S.O.S.'s fundraising ability and lengthy deliberations by S.O.S.'s Board of Directors before the Board agreed upon its proposed reorganization plan.  *Tr.* at 66-67, 483.  Had the Plan simply been hastily cobbled together by Mr. Bunch and counsel for S.O.S. and rubber-stamped by its Board, then a finding that success of the Plan was speculative might be warranted. However, the Debtor's Board of Directors investigated the relevant facts, deliberated extensively, and proposed a Plan that it both understood and was committed to fund.  *See* S.O.S. #16*, Minutes of Special Called Board Meeting;* S.O.S. #5*, Att. K, Projections of Revenue for Fourth Quarter 2007 and 2008*; Sweetwater #12*; Minutes of S.O.S. Board meetings of April 17, May 15, June 7, and June 12*.  This is solid evidence of "probable success" that should have been recognized by the Bankruptcy Court.

Finally, the policy considerations that may favor a stricter standard for showing feasibility are either absent or diminished in this case.  As one Bankruptcy Court has

stated, "[t]he purpose of the feasibility requirement is 'to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.'" *Lakeside Global, L.L.C. II*, 116 B.R. at 507 (quoting *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985)).  The Debtor is not promising a pie-in-the-sky scheme leaving creditors at risk for years into the future.  Rather, the Debtor has demonstrated a track record of fund raising and responsible management and proposed a workable plan that is consistent with its abilities as well as with its unique limitations as a charitable organization primarily dependent on voluntary donations from individuals.

Courts may perceive a particular risk to shareholders and business partners in confirming infeasible plans, finding that such plans "may well mislead potential purchasers of the stock," or would be "unfair to the Court and to persons who may do business with the debtor corporations." *In re Midwestern Cos., Inc.*, 55 B.R. 856, 863 (W.D. Mo. 1985).  In this case, there is no risk of misleading potential purchasers of stock and minimal risk to both creditors and others who may do business with Debtor.

The evidence ignored by the Bankruptcy Court showed the Debtor to be a robust non-profit organization, continuously operating since 1992 under capable management and an experienced board, with a demonstrated track record of fundraising.  The proposed $60,000 Creditor Settlement Fund was shown to have been carefully considered by the S.O.S. board, who reached that figure by balancing the desire to provide a maximum return to creditors with the realities of what was feasible for the organization. And already S.O.S. supporters were committing to funding the Plan.

As the Debtor sufficiently demonstrated feasibility at the confirmation hearings, and was within the applicable deadlines for obtaining confirmation, the Debtor asks that this Court reverse the Bankruptcy Court's finding on feasibility, overrule Sweetwater's objection, and enter an order confirming the Debtor's First Amended Plan.

iii.    The Bankruptcy Court Abused Its Discretion in Refusing to Accept Additional Evidence on Feasibility Presented by the Debtor After the Confirmation Hearings

Following the Bankruptcy Court's order denying confirmation, the Debtor timely filed a Motion for New Trial or to Alter or Amend Order Denying Confirmation of Debtor's First Amended Plan, or in the Alternative, to Present Additional Evidence on Confirmation of Debtor's First Amended Plan ("Motion to Amend Order Denying Confirmation").  D-138.  This motion was made pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59.  The Bankruptcy Court denied both of types of relief requested by the Debtor's motion, refusing to grant a new trial or to allow the additional evidence. *See* Order of June 13, 2008, D-150.  The evidence offered in support of the motion consisted of an affidavit of Mr. Bunch, showing that the Debtor was prepared to demonstrate funding for the Creditor Settlement fund.  *See* D-138.

In determining whether to allow new evidence, the Fifth Circuit has set a more flexible standard, compared to some other circuits, for allowing new evidence. Specifically, that court has held that unlike a motion under F.R.C.P. 60(b), which provides a specific form of relief and has stricter limitations, a movant seeking to reopen a case under 59(e) on the basis of evidentiary materials that were not timely submitted:

> need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong. …In deciding whether to consider late-filed

evidence, the district court must strike a proper balance between two competing interests:  "the need to render just decisions on the basis of all the facts."

*Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994) (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F. 2d 167, 174 (5th Cir. 1990)).   On appeal, the standard for reviewing the trial court's decision to admit or not admit such evidence is "abuse of discretion."  *Id.* at 937-938.

In deciding whether to exercise its discretion to accept evidence in support of a Rule 59(e) motion to alter or amend, courts should focus on four main factors: "(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was available to plaintiffs [prior to the entry of judgment], and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." *Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394 at 400-401 (5th Cir. 2003) (quoting *Ford*, 32 F.3d at 937-38 (5th Cir. 1994)).

Although S.O.S. asserts that it more than adequately demonstrated feasibility at trial, Executive Director William G. Bunch's affidavit, filed with the Debtor's Rule 59 Motion—stating that as of April 21, 2008, firm pledges for the full $60,000 Creditor Settlement Fund had been made—offered additional proof that Debtor's Plan was feasible.  Mr. Bunch's affidavit established sufficient grounds to set an evidentiary hearing to allow submission and cross-examination of evidence showing that the funding was now in hand.  Allowing the introduction of this evidence, moreover, would have better achieved the policy objectives of Chapter 11, bringing finality to this case, and allowing for a just decision on all the facts.

While Sweetwater asserted that the additional evidence on feasibility was "newly created evidence," as pointed out above, S.O.S. had consistently sought to make clear the

difficult "chicken-and-egg" problem surrounding the Debtor's reorganization. Again, the fact that the Debtor's primary asset was composed of the voluntary contributions of its supporters, rather than the more predictable revenues from the sales of tangible goods and services, is a factor that the Bankruptcy Court refused to meaningfully consider.  Instead, the Bankruptcy Court continued to mechanically apply its unreasonable and improper legal test for feasibility: "Unfortunately for the Debtor, however, this Court finds that the egg must come before the chicken.  There must be a showing, before the Court can confirm the Plan, that the Debtor can perform–in this case, a showing that its donors will fund the Creditor Settlement Fund as proposed."  D-150 at 7.   This sets an even higher standard than applies to for-profit businesses. It is almost inconceivable that a party seeking reorganization must demonstate that all of the funds needed are in hand at the time of trial or else it fails a showing of "reasonable probability of success."

In light of the voluntary nature of its financial resources, the Debtor asserts that there was good reason for the Debtor not having the entirety of the Creditor Settlement Fund in hand at time of trial.  The Debtor did not fail to bring forth such evidence because of a lack of diligence, or because of a disregard of available funds, but because of the very nature of its organization.  Accordingly, the first and third factors of the Fifth Circuit's test—the reason for default in bringing forth such evidence, and the availability of the evidence— weighed in the favor of the Debtor being allowed to introduce new evidence.

For the third factor of the Fifth Circuit's test for allowing the introduction of new evidence—the importance of the evidence to the case—the additional evidence here was crucial to the outcome of the proposed reorganization, as the Bankruptcy Court had ruled

that all other provisions in the Debtor's Plan were satisfied and any other defects identified by the Court were not fatal to confirmation.

Under the fourth factor—the likelihood that other parties would suffer unfair prejudice if the case is reopened—Sweetwater's position that it would be prejudiced was simply not credible. As pointed out above, Sweetwater itself believed that S.O.S. would be able to pay out on the Creditor Settlement Fund. In addition, it is difficult to discern prejudice where Sweetwater stood to recover more on its claim under the proposed reorganization Plan than under liquidation or dismissal—a fact that was confirmed by the Bankruptcy Court's finding that the Debtor's Plan met the "best interests of creditors" test. *See Mem. Op.* at 51-52.

In light of the applicable legal test and policies surrounding Rule 59, the Bankruptcy Court' decision to deny the Debtor's request to present additional evidence on feasibility was unreasonable and an abuse of discretion. This Court should reverse that decision, and remand this case to the Bankruptcy Court for further proceedings.

**II. The Bankruptcy Court Erred as a Matter of Law in Refusing to Allow the Debtor to Change Its Small Business Debtor Status, Striking the Debtor's Amended Voluntary Chapter 11 Petition, and Dismissing the Debtor's Chapter 11 Case**

In its Voluntary Petition, filed on April 10, 2007, S.O.S. checked the box on page one that reads "Debtor is a 'small business debtor' as defined by 11 U.S.C. §101(51D)." S.O.S. and its counsel subsequently came to believe that this designation as a "small business debtor" was erroneous, based upon the law and the specific facts of this case. Accordingly, on July 15, 2008, S.O.S. filed its Amended Voluntary Petition (D-165), in which S.O.S. changed such designation to read "Debtor is not a 'small business debtor'

as defined in 11 U.S.C. §101(51D)."   At the same time it filed the Amended Petition, S.O.S. also filed an Amended Motion to Determine that Debtor is Not a "Small Business Debtor." D-167.

By written order signed August 8, 2008, the Bankruptcy Court denied the Debtor's Amended Motion to Determine That Debtor is Not a "Small Business Debtor", struck the Debtor's Amended Voluntary Petition, and granted Sweetwater's Motion to Dismiss, issuing a memorandum opinion concerning these matters.   Because of the extremely abbreviated deadlines in which a small business debtor must obtain confirmation of its Plan[9], the Bankruptcy Court's refusal to allow S.O.S.'s amendment of its bankruptcy petition ultimately resulted in S.O.S. not being allowed to file a Second Amended Plan of Reorganization.

The mis-designation of S.O.S. as a small business debtor in this case was initially not recognized by the parties, the Bankruptcy Court, or the United States Trustee.   The mis-designation was not an attempt to game the proceedings or advantage the Debtor at the expense of other parties or the court, but was rather a mistake that became clear later in the case.   Because the original designation was a mistake and because the meaning of the statutory language is a pure question of law, the Debtor asserts that principles of collateral and judicial estoppel should not prevent the Debtor from changing its designation, as the Bankruptcy Court held in its August 8 order.   In addition, strong

---

[9] The Code provides: "In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121 (e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121 (e)(3)." 11 U.S.C. § 1129(e).   In addition, Section 1121 of the Code grants a small business debtor a longer exclusivity period for filing a plan (180 days for a small business case, vs. 120 days in other Chapter 11 cases) but also requires that "the plan and disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief."   11 U.S.C. §1121(e)(1).

Chapter 11 policy reasons, which were overlooked by the Bankruptcy Court, favor allowing the Debtor another chance at reorganization.

The Bankruptcy Court erred as a matter of law and as a matter of policy in refusing to allow the Debtor to amend its designation and file another Plan.  In the event this Court decides to uphold the Bankruptcy Court's determination that the Debtor's Plan was not feasible, this Court should reverse that court's ruling denying the Debtor a right to amend its designation, striking its Amended Voluntary Petition, and dismissing the Chapter 11 case, and should remand the case to the Bankruptcy Court to allow the Debtor to file another Plan.

      i.      <u>The Bankruptcy Court Erred as a Matter of Law in Determining that the Debtor Could Not Change Its "Small Business Debtor" Designation, As the Debtor Was Never A "Small Business Debtor"</u>

As this issue concerns a question of law regarding the Bankruptcy Code, the proper standard of review is *de novo*.  *In re Missionary Baptist Foundation. of America, Inc.*, 712 F.2d at 209; *Village of San Jose v. McWilliams*, 284 F.3d at 790 (7th Cir. 2002).

11 U.S.C. §101(51C) defines "small business case" as "a case filed under chapter 11 of this title in which the debtor is a small business debtor."  11 U.S.C. §101(51D), in turn, defines "small business debtor" as "… a person engaged in commercial or business activities …" whose aggregate noncontingent liquidated secured and unsecured debts does not exceed $2,190,000.00 and for which the U.S. trustee has not appointed a committee of unsecured creditors.

S.O.S. clearly falls within the *debt parameters* of the "small business debtor" definition, in terms of the dollar amounts of its secured and unsecured debt, and no creditors committee was appointed in this case.  But S.O.S. is not "a person engaged in

commercial or business activities", an integral part of the definition.  S.O.S. is a nonprofit

entity, formed pursuant to the provisions of the Texas Non-profit Corporation Act[10]; it is

what the Bankruptcy Code refers to throughout as "a corporation that is not a moneyed,

business or commercial corporation".  *See, e.g.*, 11 U.S.C. §§ 303(a), 1112(c) and

1129(a)(16).  S.O.S. is an environmental advocacy organization that has consistently

maintained its status as a charitable, not-for-profit, tax-exempt organization under the

internal revenue laws of the United States.

Because S.O.S. was never a "small business debtor," the designation was void *ab

initio*.  This is made clear by case law decided under the Bankruptcy Code prior to the

2005 amendments, discussing language that is identical in certain respects to what is

currently found in 11 U.S.C. §101(51C):

> "The most basic rule of statutory construction is that a statute must be
> interpreted to mean what it says.  And section 1121(e) specifically limits
> the election to debtors who are, in fact, small businesses:
>
> "(e) In a case in which the debtor *is a small business* and elects to be
> considered a small business-
>
> "We find that the election was void *ab initio* because debtors were not
> small businesses as that term is defined by the Code. That finding does not
> nullify the Chapter 11 filing itself, just the small-business election."

*In re Coleman Enterprises*, 275 B.R. 533, 537 (8th B.A.P. 2002) (internal citations

omitted) (emphasis in original).  *Compare* 11 U.S.C. §101(51C) ("The term "small

business case" means a case filed under chapter 11 of this title in which the debtor *is a

small business debtor*") (emphasis added).

Even though *Coleman Enterprises* specifically involved a debtor that did not meet

the debt parameters, the reasoning from the Eighth Circuit Bankruptcy Appellate Panel

---

[10] Article 1396-1.01, TEX. REV. CIV. STAT. ANN.

applies in this case as well: because S.O.S. is not a "small business debtor" as the Code defines that term, its designation as such was void from the outset.  And where an action is void *ab initio*, neither collateral estoppel nor judicial estoppel can restore validity to the void action.

Aside from the issue of whether or not the designation was void, the Rules of Bankruptcy Procedure expressly provide for the amendment of the "small business debtor" designation by the debtor.  *See* Rule 1020(a) and (b), Rules of Bankruptcy Procedure.  Rule 1020(a) requires the debtor to "state in the petition whether the debtor is a small business debtor" and provides that "the status of the case with respect to whether it is a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect."  Rule 1020(b) provides that "the United States trustee or a party in interest may file an objection to the debtor's statement … not later than 30 days after the conclusion of the meeting of creditors … *or within 30 days after any amendment to the statement*, whichever is later." [emphasis added].  S.O.S. exercised its right to amend this statement, consistent with the law and the facts of this case, and the Bankruptcy Court erred in striking the amendment.

The Bankruptcy Court erred as a matter of law in refusing to recognize that S.O.S. is not "a small business debtor" as the Code defines that term.  Thus, the Bankruptcy Court's subsequent ruling that it had no choice but to dismiss the case, due to the expiration of the 300-day deadline to file a plan [Section 1121(e)(2)] was also clear error.

      ii.      <u>The Bankruptcy Court Failed to Balance the Equities and Recognize the Policies Underlying Chapter 11 That Favor Giving the Debtor Another Opportunity to Reorganize</u>

In Chapter 11 cases, the primary responsibility of the bankruptcy court is to ensure confirmation of a reorganization plan that rehabilitates the debtor while providing creditors the maximum return on their claims against the debtor's estate.  *Kaiser Aerospace and Electronics Corp. v. Teledyne Indus., Inc.*, 229 B.R. 860, 868-69 (S.D.Fla. 1999).  "Since the policy of Chapter 11 is to permit successful rehabilitation of debtors, rejection should not be permitted without a finding that that policy would be served by such action." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188 (1984), superseded by statute on other grounds, 11 U.S.C. 1113 (1984). "Determining what would constitute a successful rehabilitation involves balancing the interests of the affected parties—the debtor, creditors, and employees." *Id.*

In balancing the equities, the restrictions of the Bankruptcy Code's small business provisions should be weighed against policies that favor giving a Chapter 11 debtor "the opportunity to succeed or fail on his own."  *In re Barnes*, 310 B.R. 209 (Bankr. D.Colo. 2004).  In *Barnes*, the bankruptcy court was faced with the question of whether failing to meet the filing deadline imposed by the then-existing version of 11 U.S.C. § 1121(e) should result in Chapter 11 debtor being converted to Chapter 7.   Relying on the "expansive equitable powers" conferred on the bankruptcy courts by 11 U.S.C. § 105, the *Barnes* court found that there would be no prejudice to creditors by alleviating the effect of the deadline, ultimately holding that:

> [T]his Debtor should be given the opportunity to succeed or fail on his own, without finding himself in liquidation or out from under bankruptcy protection because of the inability to meet the deadlines under the more restrictive "small business" process.

*In re Barnes*, 310 B.R. at 213.

In this case, the Bankruptcy Court's Memorandum Opinion itself recognized that aspects of the small business provision deadlines were "unworkable."  Mem. Op. at 34. Despite this recognition, the Bankruptcy Judge refused to extend the deadlines in question other than for the duration of the hearing itself, and later denied S.O.S. the right to change its small business debtor designation, basing its ruling on principles of collateral and judicial estoppel.  Missing from the Bankruptcy Court's balancing of the equities is a discussion of the harm *to the Debtor* that would result from not allowing a change of designation.  The Bankruptcy Court overlooked a fundamental policy underlying Chapter 11, which argues in favor of a debtor being given a chance to "succeed or fail on his own," rather than to be forced out of bankruptcy protection by arbitrary deadlines imposed by the small business debtor designation.  The Bankruptcy Court made no finding whatsoever that its rulings on the small business deadlines and the change of designation accorded with the policies of the Chapter 11 process.

The Bankruptcy Court erred as a matter of law, and with respect to the overall policy of Chapter 11, in not allowing the Debtor to amend its small business debtor designation.  In all respects, S.O.S. has been a model debtor-in-possession during its Chapter 11 proceedings, and has put forth a Plan that provides a fair and equitable return to its creditors while allowing for successful financial rehabilitation.  The Debtor's Plan itself was within a hair's breadth of being confirmed, yet the Bankruptcy Court decided—based on what is essentially a technicality—that the Debtor should not have another chance to reorganize.  The Debtor asserts that the existence of a mistake of law on the part of the Debtor and its counsel, the unambiguous definition of a "small business debtor" in the Code, and the overriding policy of Chapter 11 all weigh in favor of the

Debtor being allowed another opportunity to propose a reorganization plan, which can then be judged on the merits.

> ### iii.   The Debtor Met the Requirements of the Law By Filing a Plan Within the 300-Day Deadline and Therefore Should be Allowed to File Another Plan

The Bankruptcy Court's decision to dismiss the Chapter 11 case was wrong for another reason. Even if this Court were to agree with the Bankruptcy Court and rule that S.O.S. is "stuck" with its "small business debtor" mis-designation, the Bankruptcy Court nonetheless erred in dismissing the Chapter 11 case because S.O.S. did not miss the 300-day deadline for a small business debtor to file a plan. S.O.S. did, in fact, file a plan well within the 300-day time frame provided for in Code Section 1121(e)(2). The hearing on confirmation of that plan was commenced well within that 300-day deadline and within the prescribed 45-day time frame of Section 1129(e). The hearing on confirmation was not concluded within the 45-day time frame, as it took place on five different days over a period of just over three weeks. At the end of that hearing, the Bankruptcy Court took the case under advisement for a period of more than four months.

During the months-long period the case was under advisement, the 300-day mark in the case came and went. When the Bankruptcy Court issued its rulings on April 11, 2008, S.O.S. exercised its right under the Bankruptcy Rules to ask the Bankruptcy Court to reconsider certain rulings, to amend its earlier orders and to allow S.O.S. to present additional evidence on the feasibility issue. After a hearing, these motions were also taken under advisement for a time and were ruled upon in mid-June, 2008, some fourteen months after the bankruptcy case had been filed. None of these delays were the result of dilatory conduct on the part of the Debtor and its counsel, both of whom diligently

40

prosecuted the Chapter 11 case within the time frames required by law. This is not to say the delays were the fault of someone else; the factual and legal issues involved in the case were numerous and complex, and it is understandable that the Bankruptcy Court took some time to consider the evidence and the law. The Debtor, however, should not be punished for a timetable running during this period. All that Section 1121(e)(3) requires is that a plan must be filed within the 300-day time frame; if this deadline is met and a plan is timely filed, then certainly a debtor should be able to amend its plan and try again if, for some reason, the timely-filed plan is not confirmed or if circumstances change and amendment is necessary.

At least one bankruptcy court has recognized this problem and permitted a debtor to file an amended plan after the expiration of the 300-day deadline. *In re Florida Coastal Airlines, Inc.*, 361 B.R. 286 (Bankr. S.D. Fla. 2007) is primarily a case on the issue of "exclusivity", which is not an issue in this case. But in that case, the bankruptcy judge also had to deal with questions about whether the debtor would be permitted to proceed on an amended plan that was filed after the 300-day mark had passed. In *Florida Coastal*, the small business Chapter 11 debtor filed its orginal plan 200 days after the date the bankruptcy petition was filed; its amended plan was filed 309 days after the petition date. The bankruptcy court in that case ruled the 300-day deadline had been met because the amended plan—which the judge characterized as "a cleaned-up version of its original plan"—"related back" to the original, timely-filed plan. *Id.* at 290.

One might query, as the Bankruptcy Court did in one of the subsequent hearings in this case, why the debtor's appropriate remedy wouldn't be to simply file a new bankruptcy petition and try again in a second case? The answer lies in the 2005

amendments to the Bankrupcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). One of the most punitive consequences of being designated a "small business debtor" under BAPCPA involves the so-called "serial filing" provisions. *See* 11 U.S.C. § 362(n). Under this new provision, except under very limited circumstances, a debtor will lose the protection of the automatic stay upon filing of a subsequent bankruptcy petition if (1) it is a debtor in a pending small business case, (2) it was a debtor in a small business case that was dismissed in the preceding two years, or (3) it was a debtor in small business case that was confirmed in the preceding two years. In this case, requiring S.O.S. to file another bankruptcy case would not only be a tremendous waste of resources—it would afford the Debtor no protection from seizure of its assets and disruption of its operations by creditors such as Sweetwater.

This Court should reverse the Bankruptcy Court's rulings denying S.O.S. the right to amend its designation, striking its Amended Voluntary Petition, and dismissing the Chapter 11 case, and should remand this case to the Bankruptcy Court so that the Debtor may file a Second Amended Plan of Reorganization.

> **III.    The Debtor's Separate Classification of Judgment Creditor Sweetwater (Class 4) from the General Unsecured Creditors (Class 6) Was Proper and Based on Sweetwater's "Distinctly Different Stake in the Future Viability" of the Debtor, or "Non-Creditor Interests"**

In the event that this Court does not reverse the lower Court and confirm Debtor's Plan as feasible, but decides that a remand would be proper to allow the Debtor to file a Second Amended Plan of reorganization, the classification of Sweetwater's claim will again be at issue. Accordingly, the Debtor seeks from this Court a ruling that Sweetwater

holds a "non-creditor" interest in the Debtor's future organization that justifies separate classification.

In this case the Debtor provided at least three strong reasons, with supporting evidence, for why Sweetwater's debt should be classified separately from S.O.S.'s general unsecured creditors, including: (1) Sweetwater's unique interest in hindering S.O.S.'s ability to pursue state court litigation challenging the judgment underlying Sweetwater's claim as void; (2) Sweetwater's unique position as a Hill Country developer with conflicting interests with the Debtor on projects and activities having nothing to do with Sweetwater's attorney fee judgment; and (3) Sweetwater's antagonistic motivation to see S.O.S. fail to reorganize, evidenced by the Sweetwater's extreme positions in settlement negotiations and its continued insistence that the Debtor pay the full amount of the its judgment claim.

As with its determination of feasibility, the Bankruptcy Court has again overlooked crucial pieces of evidence and crafted a stricter legal standard than that which is established in the applicable case law. Whether reviewed under a clearly erroneous or a *de novo* standard, the Bankruptcy Court erred in concluding that Sweetwater's classification was improper and not based on a non-creditor interest.

The Bankruptcy Code provides, in relevant part, that "a plan may place a claim or an interest in a particular class only if such claim is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). As should be noted, this provision only prohibits grouping dissimilar claims together, and says nothing about separate classification of similar claims. *See In re Greystone III Joint Venture*, 995 F.2d at 1278.

A plan proponent is afforded significant flexibility in classifying claims, with the only clear limit imposed by *Greystone* being the prohibition on gerrymandering in order to secure the vote of an impaired, assenting class of claims. 995 F.2d at 1279. "Separate classification of some unsecured claims is allowed if the classification scheme is reasonable." *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 113 (Bankr. N.D. Tex.) (citing 7 *Collier on Bankruptcy*¶ 1122.03[4][a] (15th ed. rev.2000)).

One justification for separately classifying similar claims is the presence of a "non-creditor interest." "A creditor with 'a different stake in the future viability' of the reorganized debtor has a non-creditor interest that may justify separate classification of its claim." *In re Premiere Network Servs.*, 333 B.R. 130, 134 (Bankr. N.D. Tex. 2005) (citing *In re U.S. Truck*, 800 F.2d 581, 587 (6th Cir. 1986)). In *U.S. Truck*, the creditor Teamsters Committee had a "virtually unique" non-creditor interest where rejection of the plan would be to their advantage because it preserved an ongoing employment relationship. 800 F.2d at 587.  To classify the Teamsters with other impaired creditors would have prevented the Court from considering the affirmative votes of the other impaired creditors.  *Id.*

Similarly, in a seminal Fifth Circuit case following *Greystone*, the Court upheld confirmation of a plan where the largest unsecured claim, held by the Heartland Savings & Loan Association ("Heartland"), had been classified separately from the claims of other unsecured creditors, including the City of Fort Worth.  *In re Briscoe Enterprises, Ltd., II*, 994 F.2d at 1166-67.  Even though all unsecured creditors received the same treatment under the plan, and the claims of Heartland and the City of Fort Worth both involved large loans to the debtor, the Fifth Circuit upheld the separate classification as

proper on the basis of the City of Fort Worth's unique relationship with the Debtor.  *Id.* at 1167.  "[The City of Fort Worth's] continuing contributions and interests make it distinct from Heartland and the trade creditors."  *Id.*

> As one Texas Bankruptcy Court summarized the non-creditor interest case law:

> a careful reading of many of the non-creditor interest cases . . . suggests that the courts were not focused on the facts, but on *the voting motivation* flowing from those facts.  In other words, courts have permitted separate classification of a claimant holding a non-creditor interest where there is evidence that the claimant will vote its claim based upon its non-creditor interest in the case, *rather than its economic interest as a creditor*.

*In re The Heritage Org., L.L.C.*, 375 B.R. 230, 304 (Bankr. N.D. Tex. 2007) (collecting cases) (emphasis added).

In addition to finding a non-creditor interest in instances where a creditor wishes to preserve a beneficial business relationship with the debtor, such as in *Briscoe Enterprises*, Courts have also discerned a non-creditor interest in cases where a creditor is antagonistic to the debtor and wants to see the debtor's business fail.  *See e.g. In re Premiere Network Servs.*, 333 B.R. at 135 (Northern District of Texas Bankruptcy Court permitting separate classification for unsecured claim of direct competitor of the debtor who would benefit if the reorganization failed).

In *Heritage Organization*, the Bankruptcy Court for the Northern District of Texas held that separate classification was permissible and justified, with the Court pointing to the facts that the group of claimants: 1) held a non-creditor interest based on their desire to avoid litigation exposure with respect to proceedings brought by the bankruptcy estate's trustee; and 2) had every motivation to block approval of the plan for reasons having little to do with their status as creditors.  375 B.R. at 305.  The group of claimants had a "virtually unique interest" in keeping the estate insolvent and unable to

fund continued litigation against them.  *Id.*   Despite the fact that the separate classification featured unsecured claims receiving the same treatment, the court in *Heritage Organization* found that the facts of the case warranted such classification and that there had been no gerrymandering.  *Id.*

In this case, the Bankruptcy Court's Memorandum Opinion held that the separate classification of Sweetwater in Class 4, apart from the General Unsecured Creditors in Class 6, was improper gerrymandering to obtain an affirmative vote, which is prohibited under Fifth Circuit precedent.  *See In re Greystone III Joint Venture* (*Phoenix Mutual Life Insurance Company vs. Greystone III Joint Venture*), 995 F.2d 1274, 1279 (5th Cir. 1991).

As with the legal standard for feasibility, the Bankruptcy Court has again crafted a stricter legal standard than that which is established in the applicable case law.  In reaching its conclusion that the Debtor had not shown Sweetwater to have a "non-creditor interest" affecting its vote on the Plan and justifying separate classification, the Bankruptcy Court seems to conflate its classification analysis with its earlier discussion and application of the legal standard governing "bad faith" designations under Section 1126 of the Code.  Specifically, the Court writes: "[a]s stated above in the section addressing designation of Sweetwater's vote as having been cast in bad faith, its desire to end the litigation over its claim is an integral part of its 'creditor interest.'" *Mem. Op.* at 49.  The Bankruptcy Court further concludes it does not have to consider whether the still-contested nature of Sweetwater's claim makes separate classification permissible, reasoning that the Debtor had not shown that Sweetwater's negative vote on the Plan would actually result in the Debtor's abandoning future litigation over Sweetwater's

claim in state Court.  *Id.*  So even if Sweetwater had a non-creditor interest, the Court concludes, it could not be said to "taint" its vote.  *Id.*

First, the Bankruptcy Court's legal standard is incorrect because the assertion that "litigation is an integral part of [Sweetwater's] 'creditor interest'" is clearly contradicted by the case law on non-creditor interests.  The Bankruptcy Court's conclusion is all the more surprising in light of its recognition that *Heritage Organization* and other authorities establish that "[a] creditor's ongoing involvement in litigation with the debtor has been held to be such a non-creditor interest, justifying separate classification of the creditor's claim."  *Mem. Op.* at 47.

The Bankruptcy Court also applies the wrong legal standard by engrafting a causation requirement on to the test for showing a non-creditor interest.  The Court cites no authority for the proposition that the Debtor must show that "denial of confirmation of the Plan would necessarily or even probably result in the Debtor abandoning that litigation."  *Mem. Op.* at 49.  The relevant inquiry into a non-creditor interest, as seen in the case law discussed above, concerns the relationship between the creditor at issue and the Debtor—specifically, whether that creditor has a "different stake in the future viability" of the Debtor—and the voting motivation of the creditor.

In this case, several factors, from the business perspective of the Debtor, established that Sweetwater had a non-creditor interest, or a "different stake in the future viability," putting Sweetwater in a class of its own.  Some of these factors are not addressed by the Bankruptcy Court's Memorandum Opinion.

First, as the subject of state court litigation to be brought by the Debtor over the merits of Sweetwater's claim, Sweetwater was uniquely situated and had "a different

47

stake in the future viability" of the Debtor, post-reorganization, when compared to the other impaired creditors. *See Tr.* at 537 *et seq.* As in *Heritage Organization*, Sweetwater wished to avoid litigation exposure, and had every reason to block approval of the plan for reasons having little to do with its economic interest as a creditor.

Second, the Debtor showed that Sweetwater's managing partner, William Gunn, was seeking, through the Monarch Utility, the right to pump substantial amounts of water from the Barton Springs Edwards Aquifer and that Debtor was the only party challenging the permit sought by Monarch from the Barton Springs Edwards Aquifer Conservation District. *See* S.O.S. #45, p. 3. Sweetwater's Gunn would be served by Debtor being forced out of business and, therein, losing standing to challenge the permit. *See Tr.* at 533-36. There was also testimony indicating that Mr. Gunn wanted S.O.S. to stop helping in an appeal of Sweetwater's wastewater permit. *See id.* at 533.

The Debtor also showed that Sweetwater was the only creditor seeking to tie Debtor's hands in dealings with the creditor on water or development issues at other sites around the Hill Country. *See Tr.* at 502-03. The draft settlement agreements exchanged between Debtor and Sweetwater/Lazy Nine MUD show conclusively that Sweetwater/Lazy Nine MUD wanted to make sure that Debtor would not contest its activities, not just in the boundaries of the Lazy Nine MUD but also in any and all "spinoff" MUDs that the Lazy Nine MUD legislation authorized. *See* S.O.S. #21; *Tr.* at 512, 516, 521, 527-28. Sweetwater's interests in these settlement negotiations were decidedly non-monetary. *See Tr.* at 512. While these factors may not have been sufficient to support a finding of "bad faith" in the casting of Sweetwater's negative vote

48

on Debtor's proposed plan, they are sufficient to show non-creditor interests that are distinct from all of the other creditors.

Third, testimony from Sweetwater's own Managing Partner, William Gunn, emphasizes the deep antagonism animating Sweetwater's vote on the Debtor's Plan.  As pointed out by the Bankruptcy Court's Memorandum Opinion, Gunn testified on cross-examination at the confirmation hearings that "given SOS's tactics in attempting to thwart the Sweetwater development, it was appropriate to insist on full payment even if SOS did not have the ability to pay." *Mem. Op.* at 20.  This unreasonable position has no relationship to Sweetwater's economic interest as a creditor in bankruptcy.  Instead, Mr. Gunn's testimony suggests a voting motivation stemming from Sweetwater's desire to see S.O.S. fail, just as the creditor in *Premiere Network* wanted to see its competitor fail.

All other creditors in these Chapter 11 proceedings voted for the Debtor's Plan. S.O.S. made diligent and good faith efforts to negotiate with judgment creditors Cypress-Hays and Mak Foster, and was able to reach settlements with these parties.  In a true balancing of the equities, it is hard to see why Sweetwater's vote should dominate the claims of the General Unsecured Creditors voting for the Plan, when such a vote is based on antagonism and litigation existing outside the context of bankruptcy and unrelated to a creditor's economic interest.

Recognizing that Sweetwater's non-creditor interest would motivate its vote on the Plan, it was eminently reasonable for the Debtor to place Sweetwater in its own class. The Bankruptcy Court erred as a matter of law and as a matter of fact in determining that the Debtor had no business reason for separately classifying Sweetwater's judgment claim.

**CONCLUSION**

Wherefore, the Debtor S.O.S. Alliance prays that this Court reverse the Bankruptcy Court's finding that Debtor's Plan was not feasible under 11 U.S.C. § 1129(a)(11),  overrule Sweetwater's objection, and enter an order confirming the Debtor's First Amended Plan.  The Debtor's First Amended Plan was confirmable within the applicable deadlines, as feasibility was sufficiently demonstrated at trial and all other requirements of 11 U.S.C. § 1129 were met.  Alternatively, S.O.S. prays that this court remand to the Bankruptcy Court to (a) consider the evidence relevant to the multi-factor "feasibility" test and in light of the preponderance of the evidence standard, and/or (b) to consider S.O.S.'s supplemental evidence on funds available to pay the Creditor Settlement Fund.

Alternatively, if this Court upholds the Bankruptcy Court's determination of infeasibility, the Debtor prays that this Court reverse the Bankruptcy Court's determination that the Debtor cannot change its designation as a "small business debtor" and file another Plan, and further prays that this Court reverse the Bankruptcy Court's decision to strike the Debtor's Amended Voluntary Petition for Chapter 11 reorganization.  The Debtor further prays that this Court instruct the Bankruptcy Court to allow creditor Sweetwater to be classified separately from all other unsecured creditors in light of Sweetwater's non-creditor interests.

/s/  B. Weldon Ponder, Jr.
B. WELDON PONDER, JR.
State Bar of Texas No. 16110400
Building 3, Suite 200
4601 Spicewood Springs Road
Austin, Texas  78759-7841
Phone (512) 342-8222 / Fax (512) 342-8444


ANDREW HAWKINS
Staff Attorney for Save Our Springs (S.O.S.) Alliance, Inc.
State Bar of Texas No. 24055636
WILLIAM G. BUNCH
Executive Director and Chief Legal Counsel for
Save Our Springs (S.O.S.) Alliance, Inc.
State Bar of Texas No. 03342520
221 East 9th Street, Suite 300
Austin, Texas  78701
Phone (512) 477-2320 / Fax (512) 345-8926

ATTORNEYS  FOR  THE  DEBTOR  IN  POSSESSION,
SAVE OUR SPRINGS ALLIANCE, INC.

## CERTIFICATE OF SERVICE

I, B. Weldon Ponder, Jr., the attorney of record for the Appellant and Cross-Appellee, Save Our Springs (S.O.S.) Alliance, Inc. hereby certify that on the 13th day of February, 2009, I served a true and correct copy of the foregoing Brief of Appellant on each of the following parties or their attorneys of record, by depositing same in the United States Mail, first class postage prepaid, and addressed to such party or attorney as follows:

Rebecca S. McElroy
Martinec, Winn, Vickers & McElroy, P.C.
600 Congress Avenue, Suite 500
Austin, TX 78701

Deborah A. Bynum
Office of the United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701

Signed February 13, 2009            __/s/  Weldon Ponder_____
                                     B. Weldon Ponder, Jr.

iii